KLIEBERT, Judge.
The City of Kenner and the Parish of Jefferson instituted a water, sewerage and street paving project for certain squares in the Kenner Project Subdivision with the cost of the projects being assessed against *791 the bordering landowners.[1] Under the assessment ordinances of each governmental agency the bordering landowner could pay his pro-rata share of the investment in cash or in ten equal annual installments — “bearing interest at the rate not to exceed eight per centum (8%) per annum from January 24, 1977 until paid, said interest to be payable annually on January 24 of each of the years 1978 to 1987 inclusive”. An election by the landowner to pay cash or to finance had to be made prior to the time construction of the improvements commenced.
After the expiration of the cash payment option, the City of Kenner sold $1,124,000.00 of sewerage certificates and $4,695,000.00 of paving certificates. At the same time, the Parish of Jefferson sold $919,700.00 of the waterworks certificates. All certificates sold bear interest of 6% per annum with a 2% per annum interest bonus for the period June 1, 1977 to May 1, 1978. The 1978 installment bill to the landowners made an interest charge on the assessment of 8% per annum.[2]
In February, 1978, two of the lot owners filed a class action suit against the City of Kenner, and its special Consolidated Sewerage District, the Jefferson Parish Council and the East Jefferson Waterworks District Number One. The suit alleges the defendants have received or will receive excessive funds[3] in the form of (1) unspent project contingency funds (2) yearly interest charges in excess of that borne by the certificates and (3) interest earned on the investment of funds obtained on the sale of the certificates. The petition prays for the following relief:
(a) an injunction prohibiting the defendants from assessing the landowners an interest charge in excess of that borne by the certificates.
(b) a refund to the landowners of any of the excess funds specified in (1), (2) and (3) of the preceding paragraph, and
(c) a judgment declaring the statutory scheme which allows the overcharge to be unconstitutional.
The improper or inadequate designation of the name of the defendants and the failure of the plaintiff to include the Attorney General as a defendant resulted in exceptions of prematurity and non-joinder of parties and of no right or cause of action being filed against the petition. Additionally, defendants filed an exception of no right or cause of action grounded in a contention plaintiff was an improper representative of the class. Before these exceptions were fully disposed of the plaintiffs filed a pleading designating it as “Motion for Judgment”, alleging it to be a requirement of R.S. 13:5121, et seq.[4] Defendants opposed the “Motion for Judgment” and prayed for a dismissal of same on the grounds the peremptive period set by Arti- *792 ele 6, Section 35(b)[5] for contesting the issuance of front foot assessments had expired.
After hearings, the trial judge rendered judgment which dismissed the defendants’ exceptions of prematurity and non-joinder. Further, it also dismissed the defendants’ exception of no cause of action grounded in the contention plaintiff was an improper representative of the class and held plaintiffs were entitled to represent the entire class upon plaintiffs sending notice to all possible plaintiffs permitting them to participate in or withdraw from the class. The trial judge further ruled that the plaintiffs had no cause of action to contest the validity of the assessment ordinances because such an action is now barred by the provisions of Louisiana Constitution Article 6, Section 35(b), but ruled plaintiffs were entitled to a declaratory judgment of their status under the assessment ordinances.
The plaintiffs filed a devolutive appeal assigning as error the trial court’s ruling that his time for attacking the constitutionality of the ordinance has expired. We find no such error.
Article 6, Section 35(b) of the 1974 Louisiana Constitution clearly provides that 30 days after the assessment ordinance has been enacted and published:
“... no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof for any cause whatever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligation were authorized, has been complied with. No court shall have authority to inquire into any of these matters after the thirty days.”
Similar peremption provisions were contained in the previous Louisiana Constitution. The need and necessity for such a provision (contained in the 1921 Constitution) was stated in McGuffie v. Police Jury of Catahoula Parish, 183 La. 391, 163 So. 841 (La.1935) at Page 2, and was quoted by plaintiff in his brief as follows:
“The constitutional limitation invoked by the Police Jury was devised in the public interest, to protect the fisc from uncertainty and to protect the bonds, to be issued, from attack after a reasonable time allowed the taxpayer within which to contest the validity thereof for any cause.” (Page 843)
The validity of such peremptive provisions have been upheld by the courts several times. See Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280 (1923); Audubon Ins. Co. v. Parish of East Baton Rouge, 366 So.2d 972 (La.App., 1st Cir. 1978); Lege v. Vermillion Parish School Board, 360 So.2d 664 (La.App., 3rd Cir. 1978); McGuffie v. Police Jury of Catahoula Parish, 183 La. 391, 163 So. 841 (La.1935).
The essence of plaintiffs’ argument here is that his attack is different and hence is not pre-empted by Article 6, Section 35(b) because he does not seek to impede or disrupt the public project or its financing but rather merely seeks the return of funds that have been shown to be unnecessary and unused in the projects. The argument fails to recognize that there has not as yet *793 been an evidentiary hearing in this litigation. The trial court’s ruling provides for an evidentiary hearing following which the plaintiffs’ status under the ordinances will be declared. In effect, plaintiff counsel is asking this court to rule that there will in fact be “unnecessary and unused funds” in the project and that unless those funds are refunded to the landowners, the ordinances are unconstitutional. To do so would be for us to render an advisory opinion which we do not have the authority to do.
Whether there is or will be “unnecessary and unused funds” and the disposition to be made of such funds will be determined in the evidentiary hearing provided for by the trial court’s ruling. Thereafter, the plaintiffs can seek a review of the trial judge’s ruling by exercise of their right to appeal.
Accordingly, the trial court’s judgment is affirmed. All costs to be borne by plaintiffs.
AFFIRMED.

. The City of Kenner assessed the sewerage and street paving project through its Ordinance Numbers 2022 and 2025. The Parish of Jefferson assessed the water improvement project through its Ordinance No. 12828.

. Installments for the years 1979, 1980 and 1981 made an interest charge of 7%.

. Each of the ordinances enacted by the City of Kenner and by the Parish of Jefferson contained a section providing substantially the following:
“After all costs, charges, fees and expenses incurred in the construction and financing of said improvements have been paid in full, the Consulting Project Engineers shall file with the person, firm or corporation administering the Construction Fund, a certificate so stating. After receipt of said certificate, the person, firm or corporation administering the Construction Fund shall make all surplus monies remaining in said Construction Fund available to the issuer. Such surplus monies, if any, shall be placed by the issuer in a separate account, which monies shall be used to maintain and operate said improvements, or until all liens are paid, to reimburse any accounts from which monies may have been contributed toward the cost of the improvement program. The person, firm or corporation administering the Construction Fund shall have no obligation or authority to supervise or control the expenditures of said surplus monies.”

.R.S. 13:5121 thru 5130 is the Bond Validation Act with R.S. 13:5125 providing for a procedural method to accelerate a suit to contest or enjoin the issuance of governmental bonds and certificates.

. Article 6, Section 35(b) of the 1974 Constitution provides as follows:
“Every ordinance or resolution authorizing the issuance of bonds or other debt obligation by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein. For 30 days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds. After that time, no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof for any cause whatsoever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligations were authorized, has been complied with. No court shall have authority to inquire into any of these matters after 30 days.”