hWOODARD, Judge.
This lawsuit arises out of the explosion of ARCO’s South Pass 60-B Platform located in the Gulf of Mexico. ARCO appeals from the trial court’s judgment that William De-Shazer, its former employee, did not disclose “company information” or “trade secrets” to SONAT, the defendant in a civil suit brought by ARCO in connection with the explosion.
DeShazer appeals from the trial court’s judgment that his “Memorandum In Opposition To Petition For Preliminary Injunction And Motion To Dissolve Temporary Restraining Order And Request For Attorney’s Fees And Damages” did not provide sufficient notice to interrupt prescription on his claim for damages against ARCO.

FACTS

Plaintiff, ARCO Oil & Gas Company (ARCO), hired the defendant, William De-Shazer, a petroleum engineer, in 1972. While in ARCO’s employ, he signed an agreement entitled “Employees Agreement Relating to Inventions, Patents and Company Information.” This agreement provided that DeShazer would not disclose, during or after employment, any “company information” acquired during his employment with ARCO.
| aDeShazer and his engineering staff of approximately sixteen to twenty engineers were responsible for the design and construction of the South Pass 60-B Platform in the Gulf of Mexico. This platform was interconnected with seven other platforms in the Gulf of Mexico in a complex array of sub-sea piping which allowed processing of hydrocarbons on it and sales of oil and gas to onshore locations. In May of 1987, he was the district engineer for the Lafayette office and was one of hundreds of longtime ARCO employees who were “involuntarily” retired.
On March 19, 1989, an explosion and fire occurred on the platform, destroying the entire facility and killing several workers. When DeShazer heard about the accident, he contacted ARCO and offered his assistance, but there was no immediate response. Subsequently, ARCO sued SONAT, who was working on the 60-B Platform at the time of the explosion, after which Charles Talley, the attorney representing SONAT, hired De-Shazer as a consultant in the ARCO/SONAT litigation.
ARCO sought a temporary restraining order, prohibiting DeShazer from serving as a consultant to SONAT, and damages for breach of his employment contract. The trial court granted the temporary restraining *446 order on July 11, 1989. In response, on September 21, 1989, DeShazer filed a “Memorandum In Opposition To Petition For Preliminary Injunction And Motion To Dissolve Temporary Restraining Order And Request For Attorney’s Fees And Damages.” On January 18,1990, the trial com* dissolved the temporary restraining order and denied ARCO’s request for a preliminary injunction. DeShazer resumed consulting with SONAT, and SONAT eventually settled the case with ARCO.
ARCO’s claim for damages for breach of employment contract and DeShazer’s claim for damages for the wrongful issuance of a temporary restraining order were set on July 8, 1993 to be heard on the merits. On February 10, 1993, ARCO filed a peremptory exception of prescription which the trial court granted on July 12, 1993, dismissing DeShazer’s claim for damages against ARCO. On November 10, 1993, the trial court rendered judgment in favor of De-Shazer, denying ARCO’s claim for damages.
DeShazer appeals and asserts the following assignments of error: The trial court erred in (1) determining that his September 21,1989 motion did not interrupt prescription on his claim for damages against ARCO; and (2) applying the one year prescriptive period applicable to delictual claims rather than the ten year prescriptive period applicable to personal claims. ARCO appeals and Rasserts the following assignment of error: The trial court erred in finding that De-Shazer did not disclose “confidential information” in violation of his employment contract.

DESHAZER’S CLAIM FOR ATTORNEY’S FEES AND DAMAGES

The trial court denied DeShazer’s claim for attorney’s fees and damages for a wrongful issuance of the temporary restraining order based, in part, on its finding that his motion was not a pleading sufficient to state a claim of damages against ARCO and therefore, did not interrupt prescription. We disagree and reverse.

DOES DESHAZER’S FILING CONSTITUTE A PLEADING?

Every pleading shall contain a caption setting forth the name of the court, the title and number of the action, and a designation of the pleading. La.Code Civ.P. art. 853. The pleading shall also contain a short, clear statement of all causes of action arising out of the material facts; designate an address, not a post office box, for receipt of service of all items involving the litigation; and shall conclude with a prayer for judgment for the relief sought. La.Code Civ.P. art. 891.
In the case sub judice, clearly, De-Shazer’s motion includes all of the above requirements except for a return address. This requirement was instituted in 1991 and its purpose appears to be to give the party being sued an address on which to serve counter litigious documents. Since ARCO already had this information in its petition for the temporary restraining order, it- was not prejudiced by this omission. Thus, the only irregularity we find is that DeShazer filed his motion coupled with a memorandum, instead of separately.
In terms of content of the motion, ARCO argues that the language “may request” damages, on page 4, is insufficient as a request because of the tentative word “may.” In so arguing, ARCO ignores part of the title of the motion on page 1, the language on page 4 and that on page 5; namely, “Motion To Dissolve Temporary Restraining Order And Request For Attorney’s Fees and Damages,” “Motion For Damages For Wrongful Issuance Of Temporary Restraining Order,” and “Accordingly, WILLIAM DESHAZER is entitled to damages as requested for the wrongful issuance of the temporary restraining order and is entitled to have the temporary restraining order dissolved,” respectively. ARCO would like this court to adopt a hypertechnical form of pleading; however, there is no specific requirement that certain words be used when a party is requesting damages, LaJ4Code Civ.P. art. 854 specifically states that no technical forms of pleadings are required and a pleading does not have to be “perfect” in order to interrupt prescription. Meyers v. Istre, 379 So.2d 1181 (La.App. 3 Cir.1980). As long as the pleading *447 alleges sufficient facts and gives “fair notice” of the relief prayed for, Parker v. Southern American Ins. Co., 590 So.2d 55 (La.1991), and is filed in a court of competent jurisdiction and venue, prescription is interrupted. Levron v. Bonin, 448 So.2d 211 (La.App. 1 Cir.1984.).
In determining whether this motion provided ARCO “fair notice” of the relief sought, one must ask could ARCO have known from the motion, as it was written, that DeShazer was suing it for damages and for what reason? To answer this question, common sense questions first come to mind: Why else would DeShazer entitle the document as he did; discuss the facts and issues of entitlement to damages regarding such facts; and especially request that the matter be set for a hearing? The trial court must have understood what DeShazer was requesting because on February 26, 1991, it mailed out “Notice of Hearing Date of Suit” to both parties in which the notice stated “Hearing To Determine Damages In The Wrongful Issuance Of A Temporary Restraining Order...And, likewise, ARCO must have understood because on the same day, its attorney wrote a letter to the clerk of court, acknowledging that damages for the wrongful issuance of a temporary restraining order would be a “potential issue.” Additionally, ARCO filed no exceptions to DeShazer’s motion until approximately four years later, while at the same time concurring in the multiple continuances regarding it. The motion, read as a whole, including its title, should have left no reasonable doubt as to DeShazer’s intent and thus, should have adequately and fairly put ARCO on notice. Based on the manner in which ARCO responded to it, we believe it did provide “fair notice.”
Having concluded that DeShazer’s motion does constitute a pleading, the next issue we must address is whether it was timely filed, interrupting prescription. La. Code Civ.P. art. 253, which governs how a pleading is to be properly filed, states, in pertinent part: “All pleadings ... to be filed in an action or proceeding instituted or pending in a court ... shall be delivered to the clerk of court for such purpose. The clerk shall endorse thereon the fact and date of filing, and shall retain possession thereof for inclusion in the record....” In the case sub judice, it is clear that DeShazer filed this pleading, within one year, with the clerk of court where ARCO’s action for a preliminary injunction was pending; the clerk endorsed the fact and date of filing on the pleading; and, the clerk ^retained possession of the pleading for inclusion in the record. Since DeShazer’s motion was filed within the shortest possible prescriptive period, it is unnecessary to determine whether one or ten years is the proper period.

DID DESHAZER REVEAL “CONFIDENTIAL INFORMATION” TO SONAT?

While DeShazer was working for ARCO, he signed an agreement which provided that he would not disclose “company information” during or after his employment. The agreement defines “company information” as:
“[Cjonfidential information including without limitation information received from third parties under confidential conditions: and (b) other technical, business or financial information, the use or disclosure which might reasonably be construed to be contrary to the interests of Company. When Company Information becomes generally available to the public other than by my acts or omissions, it is no longer subject to the restrictions of this para-graph_” (Emphasis Added).
ARCO contends DeShazer violated this agreement when he disclosed information to SONAT’s attorneys about the 60-B Platform, including its facilities and equipment, and the existence of ARCO’s central filing system and its contents and that it is, therefore, entitled to attorney’s fees under the Uniform Trade Secrets Act (UTSA) because DeShazer misappropriated “trade secrets” to SONAT’s attorneys. The trial court found that the information DeShazer disclosed to SONAT’s attorneys was public knowledge and available through other means, and that no “trade secret” was misappropriated by DeShazer.
We agree.
After the fire, the Mineral Management Service (MMS) conducted an investigation into the cause of the fire, holding a public *448 hearing at which ARCO presented testimony and exhibits. The results of the hearing were made available to the public. Johnny Edwards, who is an engineer employed with ARCO, testified that, at the hearing, ARCO presented several exhibits which included flow diagrams of the equipment on the platform, structural diagrams of the platform and layout diagrams of the production equipment. He also stated that after the fire, the platform was brought to McDermott’s shipyard, where it was made available for inspection and that “probably hundreds of different contractors” visited the platform from 1983 to 1989 to service equipment. Additionally, DeShazer stated that he reviewed all the testimonies and exhibits produced at the MMS hearing as a consultant for SONAT. Finally, Charles Talley described DeShazer’s consulting |sjob to SONAT as basically reviewing documents and providing “basic engineering” skills to explain to SONAT’s attorneys the technical and complex operations of the platform. He said that DeShazer was not a valuable source of information about the ARCO organization, its operations, its facilities, the platform, the field and its reserve and that SONAT had hired a “host of experts,” besides DeShazer, who were primarily responsible for developing the defense theories which ARCO attributes to De-Shazer’s breach of confidence, namely: scrubber/condensate drip theory; the bleed down theory; the enhanced recover theory; and the fluid dumping theory.
The record substantiates that the information alleged to have been disclosed by De-Shazer was public knowledge or available through other means: MMS had all current copies of drawings, safety devices and information concerning the equipment on the platform; ARCO’s fire fighting system and safety analysis system would have be.en filed with the MMS; the well names on the platform and field designations could be located on oil and published gas maps; and all the pipes that were connected to the platform could be located on maps found at the MMS.
Further, Charles Talley’s testimony that he learned of the existence of ARCO’s central filing system from the deposition of another ARCO employee is undisputed. In fact, Raymond Lechler, an engineer employed with ARCO from 1980 until 1991, confirmed that most companies would have similar filing systems. ARCO produced no evidence that the existence of the central filing system was confidential.
Based on the foregoing extensive evidence in the record, we find no manifest error in the trial court’s ruling. See Rosell v. ESCO, 549 So.2d 840 (La.1989).

ATTORNEY’S FEES UNDER THE UNIFORM TRADE SECRETS ACT (UTSA)

ARCO requested attorney’s fees for DeShazer’s alleged misappropriation of “trade secrets” under the UTSA which permits an award for reasonable attorney’s fees if there is a “willful and malicious misappropriation.” ARCO specifically asserts that DeShazer willfully and maliciously misappropriated “trade secrets” to SONAT’s attorneys during discovery in the ARCO/SONAT litigation. However, the UTSA was never intended to apply to discovery in civil actions. Stork-Werkspoor Diesel V.V. v. Koek, 534 So.2d 983 (La.App, 5 Cir.1988). The prohibitions of the act are to prevent one person from profiting from a trade secret developed by another because that person would be acquiring a free competitive advantage. Id. In the ease sub judice, ARCO ^presented no evidence which directly establishes that De-Shazer revealed “confidential information” to SONAT or that the information DeShazer revealed will be used by SONAT to unfairly compete with ARCO. In fact, ARCO admitted in its brief that “This case does not involve industrial espionage, where a former employee turns over trade secrets, blue prints or other materials marked top secret.” ARCO’s claim is based purely on speculation. Courts cannot award speculative damages, thus proof which establishes only possibility, speculation or unsupported probability does not establish a damage claim. Coon v. Placid Oil Co., 493 So.2d 1236 (La.App. 3 Cir.), writ denied, 497 So.2d 1002 (La.1986). Notwithstanding, this issue is irrelevant since we have concluded that any information De-Shazer disclosed to SONAT was public knowledge or available through other means and as such could not constitute a “trade secret” under the act.
*449 Again, we find no manifest error as required by Rosell, supra.

CONCLUSION

For the above stated reasons, the judgment of the trial court is affirmed insofar as it holds that DeShazer did not disclose “company information” as defined by the agreement between him and ARCO and that ARCO is not entitled to attorney’s fees under the Uniform Trade Secrets Act. The trial court’s judgment that DeShazer’s September 21,1989 motion did not interrupt prescription on his claim for damages against ARCO for the wrongful issuance of a temporary restraining order is reversed and set aside. The matter is remanded for further proceedings in accordance with the views expressed herein. Costs of this appeal are taxed against ARCO.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.